1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JACOB ATKINSON, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>      v.<br><br>BURBERRY LIMITED, a foreign for profit corporation doing business as BURBERRY; and DOES 1 through 20,<br><br>           Defendant. | Case No.<br><br>**DEFENDANT BURBERRY LIMITED'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. § 1332(a)(1), 1441, AND 1446** |

9

10

11

12

13

14

15

16

17

18

     **TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF AND HIS**

**ATTORNEY OF RECORD:**

     PLEASE TAKE NOTICE that Defendant Burberry Limited ("Defendant") hereby removes the above-referenced action from the Superior Court of Washington for King County, Case No. 23-2-19460-8 SEA to the United States District Court for the Western District of Washington. Removal is based on diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332(a)(1), 1441, and 1446. This Court has diversity jurisdiction over Plaintiff Jacob Atkinson's ("Plaintiff") lawsuit under 28 U.S.C. §§ 1332(a)(1), 1441, and 1446, because there is complete diversity between Defendant and Plaintiff and the amount in controversy exceeds $75,000, exclusive of interest and costs. Accordingly, removal is proper based on the following grounds:

19

20

21

22

23

24

25

26

27

28

1

## I.      STATEMENT OF JURISDICTION PURSUANT TO 28 U.S.C. § 1332(a)(1)

This Court has jurisdiction over this case on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a)(1), and this case may be removed pursuant to the provisions of 28 U.S.C. §§ 1441(a) and 1446, in that there is complete diversity between Defendant and Plaintiff and the amount in controversy exceeds $75,000, exclusive of interest and costs.

As set forth below, this case meets all requirements for removal pursuant to 28 U.S.C. §§ 1332(a)(1), 1441, and 1446 and is timely and properly removed by the filing of this Notice.

## II.     CLAIMS AND PROCEDURAL HISTORY

On or about October 10, 2023, individually and on behalf of all other purportedly similarly situated employees, Plaintiff commenced this action against Defendant by filing a Class Action Complaint in the Superior Court of Washington for King County, entitled *Jacob Atkinson v. Burberry Limited*, Case No. 23-2-19460-8 SEA (the "Complaint").

True and correct copies of all filings in the State Court in this action are attached to the Declaration of Katerina R. Mantell ("Mantell Decl.") as Exhibits A-I.  These include the Class Action Complaint (Exhibit A), Case Information Cover Sheet and Area Designation (Exhibit B), Order Setting Civil Case Schedule (Exhibit C), Summons (Exhibit D), Declaration of Process Server (Exhibit E); Defendant's Notice of Appearance (Exhibit F), Affidavit of Service (Exhibit G), *Pro Hac Vice* Admission motion papers for Ian Carleton Schaefer (Exhibit H), and *Pro Hac Vice* Admission motion papers for Katerina Mantell (Exhibit I).

Plaintiffs' putative class claims arise from allegations that Defendant violated the Washington Equal Pay and Opportunities Act, RCW 49.58.110, because "Plaintiff and more than 40 Class Members applied to job openings with Defendant for positions located in Washington state where the postings did not disclose the wage scale or salary range, and/or a general description of the benefits and other compensation to be offered." (*See* Mantell Decl., ¶2, Ex. A, Class Action Compl. at ¶ 14).  With respect to Plaintiff, individually, he alleges that "[o]n or about March 9, 2023, [he] applied for a job opening in Washington with Defendant. The posting for the job opening did not disclose the wage scale or salary range, or a general description of the benefits and other compensation to be offered." (*See id.* at ¶ 15). The Complaint seeks relief in the form of

-2-

"lost valuable time applying for jobs with Defendant," "[s]tatutory damages equal to Plaintiff's and the Class members' actual damages or five thousand dollars, whichever is greater, pursuant to RCW 49.58.070(1)," "costs and reasonable attorneys' fees pursuant to RCW 49.58.070(1)," preliminary and permanent injunctive relief, declaratory relief, pre- and post-judgment interest, and any additional and further relief which the Court deems equitable, appropriate, and just.  (*See id.* at ¶ 16, Request for Relief).

On October 12, 2023, Plaintiff served a copy of the Summons and Complaint on Defendant.  (*See* Mantell Decl., ¶2, <u>Ex. E</u>).

Defendant has not filed any responsive pleadings or papers in this action.

A copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Superior Court of Washington for the County of King.  Exhibits A-I of the Mantell Decl. contain all "process, pleadings, and orders" served on Defendant in accordance with 28 U.S.C. § 1446(a).

## III.    THIS COURT HAS DIVERSITY JURISDICTION OVER THIS MATTER

This Court's subject-matter jurisdiction is based upon the parties' diversity of citizenship. Pursuant to 28 U.S.C. § 1332(a), this Court has original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds the sum or value of $75,000. This civil action involves citizens of different states and the amount in controversy exceeds $75,000.

### A.    THE PARTIES ARE COMPLETELY DIVERSE
#### 1.    PLAINTIFF IS A CITIZEN OF CALIFORNIA

To establish citizenship for diversity purposes, a natural person must be both (a) a citizen of the United States and (b) a domiciliary of one particular state. *Kantor v. Wellesley Galleries, Ltd*., 704 F.2d 1088, 1090 (9th Cir. 1983).  Residence is *prima facie* evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).  Here, Defendant is informed and believes, that Plaintiff is, and at all times since the commencement of this action has been, a citizen and resident of the State of California and not Washington as he claims in the Class Action Complaint.  (Mantell Decl., ¶2, <u>Exh. A</u>, ¶8 ("Plaintiff Jacob Atkinson is a resident of King County,

1  Washington and applied online to work for Defendant at its store located at 10600 Quil Ceda

2  Blvd. #628, Tulalip, Washington 98271.")).

3       When applying for the job with Burberry, Plaintiff gave a home address in California.

4  (Declaration of Audra Guglielmetti ("Guglielmetti Decl."), ¶2, Ex. 1).  Pursuant to Plaintiff's

5  publicly available LinkedIn page and comprehensive background check, Plaintiff is a licensed

6  Acupuncturist / Certified Massage Therapist and the founder of Artisan Massage and Acupuncture

7  Wellness, and presently resides in California. (Mantell Decl., ¶3, Ex. J, Plaintiff's LinkedIn Page;

8  *see id.* at ¶4, Ex. K, relevant portions of Plaintiff's background check).  Artisan Massage and

9  Acupuncture Wellness maintains its own website and is registered as a limited liability company

10  with the Office of the Secretary of State of the State of California. (*Id.*; *see id.* at ¶5, Ex. L, Artisan

11  Massage and Acupuncture Wellness LLC website; *see id.* at ¶6, Ex. M, Articles of Organization of

12  CA Limited Liability Company).  The LLC's website lists a Goleta, California address. (*Id.* at ¶5,

13  Ex. L).  The LLC's registration identifies Plaintiff as the agent for service of process and states

14  that he resides in Goleta, California. (*Id.* at ¶6, Ex. M).

15       Even if Plaintiff resides in King County, Washington as he alleges in the Class Action

16  Complaint and provided an incorrect address on his employment action, jurisdiction under 28

17  U.S.C. § 1332(a) is still proper because Plaintiff and Defendant, which, as set forth below, are

18  citizens of different states (California or Washington and New York).  (Mantell Decl., ¶2, Exh. A,

19  ¶8).

20       Accordingly, this supporting information and his own assertions in a Complaint show that

21  Plaintiff is not only a resident of California, but domiciled here, and thus a citizen of California.

22      **2.  DEFENDANT IS A CITIZEN OF NEW YORK**

23       Defendant is a citizen of New York.  For diversity purposes, a corporation is deemed to be

24  a citizen of the state in which it has been incorporated and the state where it has its principal place

25  of business.  *See* 28 U.S.C. § 1332(c)(1).  As such, as a corporation Burberry Limited is deemed to

26  be a citizen of the state in which it has been incorporated (New York) and the state where it has its

27  principal place of business (New York).  28 U.S.C. § 1332(c)(1).

28

In *Hertz Corp. v. Friend*, 559 U.S. 77, 92-3 (2010), the Supreme Court clarified the definition of a corporation's "principal place of business" and concluded that that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." The Supreme Court further clarified that, "in practice" the principal place of business "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id*. at 93. The relevant considerations under the "nerve center" test include the following: (a) where the directors and stockholders meet; (b) where the executives live and have their offices; (c) where the administrative and financial offices are located and the records kept; (d) where the corporate income tax return is filed; (e) where the "home office" is located; and (f) where day-to-day control of the business is exercised. *Unger v. Del E. Webb Corp.*, 233 F. Supp. 713, 716 (N.D. Cal. 1964); *see also Safeco Ins. Co. of Am. v. UnitedHealth Grp. Inc.*, No. 2:13-CV-00732RSM, 2013 WL 3814387, at *3 (W.D. Wash. July 22, 2013); *Nw. Ry. Museum v. Indian Harbor Ins. Co.*, No. C17-1060JLR, 2017 WL 4466619, at *2 (W.D. Wash. Oct. 5, 2017); *Mascarello v. James W. Fowler Co.*, No. C14-5916 BHS, 2015 WL 13145597, at *1 (W.D. Wash. Jan. 15, 2015); *Baxter v. Salton, Inc.*, No. C10-1442 MJP, 2011 WL 888017, at *1 (W.D. Wash. Mar. 14, 2011).

Under the foregoing standard, Burberry, is a citizen of New York for purposes of removal. Burberry is incorporated in the State of New York and maintains its corporate headquarters in New York, New York. (Declaration of Amanda Slatin ("Slatin Decl."), ¶¶2, 3). The corporate headquarters in New York is the actual center of direction, control, and coordination of all major human resources, payroll, and administrative functions for Defendant. (*Id*. at ¶3). The respective managers and/or executives for these departments work in New York and are responsible for developing policies and protocols for Defendant's operations. (*Id*.). From its headquarters in New York, New York, Defendant makes and implements operating, financial, employee relations, development, legal, income tax, and policy decisions for its operations. (*Id*. at ¶4). The corporate Directors and Officers of Defendant work in New York, New York from its corporate headquarters. (*Id*. at ¶5). Defendant's corporate headquarters and nerve center were, at the time of

filing of the state court action, and remain to date, located in New York.  Accordingly, Defendant's principal place of business is, and was at the institution of this civil action, in the State of New York.  *See* 28 U.S.C. § 1332(c)(1).

In accordance with the foregoing, Defendant is now at the time of removal, and was at the time of the institution of this civil action, a citizen of the State of New York (and not a citizen of the States of California or Washington), and Plaintiff is now at the time of removal, and was at the institution of this civil action, a citizen of California (and not citizen of the State of New York).[1] Thus, the diversity requirement under 28 U.S.C. § 1332 is satisfied.

### 3.   The Citizenship Of The Doe Defendants Must Be Disregarded

Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants is disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332.  *Fristos v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).  Thus, the existence of Doe defendants 1 through 20 does not deprive this Court of jurisdiction.

### B.     THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.00

Without making an admission of liability or damages with respect to any aspects of this case or the proper legal test(s) applicable to Plaintiff's allegations on behalf of himself and the putative class, the amount in controversy exceeds the jurisdictional minimum of this Court as detailed below.

28 U.S.C. § 1332 authorizes the removal of class actions in which the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).  *See* 28 U.S.C. § 1332(a).  The amount in controversy is the total "amount at stake in the underlying litigation" which "includes any result of the litigation, excluding interests and costs, that 'entail[s] a payment' by the defendant." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (internal citations omitted) (diversity removal). "This amount includes, inter alia, damages

---

[1] As set forth above, even if Plaintiff is a resident of King County, Washington and Defendant is mistaken about his California domiciliary, the diversity requirement under 28 U.S.C. § 1332 is still met because Plaintiff and Defendant are citizens of different states.

(compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes." *Gonzales,* 840 F.3d. at 648-69.

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 89 (2014). Moreover, a defendant **need not set forth evidence** establishing the amount in its notice of removal. *Id.* A defendant is not obliged to "research, state, and prove the plaintiff's claims for damages." *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994). A defendant can establish the amount in controversy by setting forth a plausible allegation in the notice of removal that the amount placed in controversy by plaintiff exceeds the jurisdictional minimum. *See Dart Cherokee*, 574 U.S. at 89 (holding that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and evidentiary submissions are required only if "the plaintiff contests, or the court questions, the defendant's allegations").

"In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see also Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe…"), *aff'd*, 631 F.3d 1010 (9th Cir. 2011). The ultimate inquiry is what amount is put "in controversy" by the complaint, not what the defendant will actually owe. *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005).

In the Ninth Circuit, the amount in controversy is determined "at the time of removal." *Kroske v. US Bank Corp.,* 432 F.3d 976, 980 (9th Cir. 2005) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). In *Chavez v. JPMorgan Chase*, 888 F.3d 413, 417 (9th Cir. 2018), the Ninth Circuit held "[t]hat the amount in controversy is assessed at the time of removal does *not* mean that the mere futurity of certain classes of damages precludes them from

1  being part of the amount in controversy." *Chavez*, 888 F.3d at 417 (original emphasis). *Chavez*

2  held that "the amount in controversy is not limited to damages incurred prior to removal—for

3  example, it is not limited to wages plaintiff-employee would have earned before removal (as

4  opposed to after removal). Rather, the amount in controversy is determined by the complaint

5  operative at the time of removal and encompasses all relief a court may grant on that complaint if

6  the plaintiff is victorious." *Id.* at 414-15. These principles were affirmed again by the Ninth Circuit

7  in *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir. 2018).

8        Here, although Plaintiff's pleadings in this action fail to affirmatively disclose the amount

9  in controversy or information from which Defendant could readily ascertain the amount in

10  controversy without independent investigation and analysis, Plaintiff seeks actual or statutory

11  damages, attorney's fees and costs, and declaratory and injunctive relief as set out in in the

12  remedies sections of RCW 49.58.110(4) and RCW 49.58.070(1). Assuming that Plaintiff's suit is

13  successful, the amount in controversy requirement is clearly met. *See Sasso v. Noble Utah Long*

14  *Beach, LLC*, No. CV 14-09154-AB AJWX, 2015 WL 898468, at *3 (C.D. Cal. Mar. 3, 2015) ("In

15  assessing the estimated amount in controversy, a court must assume that the allegations of the

16  complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made

17  in the complaint."). By demonstrating that the actual amount in controversy exceeds the

18  threshold, Defendant does not concede the validity of Plaintiff's claims or the likelihood that

19  Plaintiff or putative class members will recover anything. Nor does Defendant waive its right to

20  ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect

21  to any of his claims.

22      <u>Actual and Statutory Damages</u>

23      Washington's Equal Pay and Opportunities Act provides for "actual damages; statutory

24  damages equal to the actual damages or five thousand dollars, whichever is greater, . . . costs and

25  reasonable attorneys' fees." RCW 49.58.070(1). Here, Plaintiff and prospective class members

26  claim that they each "lost valuable time applying for jobs with Defendant" and have suffered

27  "actual damages or five thousand dollars, whichever is greater." (Mantell Decl., ¶2, <u>Exh. A</u>, ¶16,

28  Request for Relief). Therefore, at a minimum, Plaintiff's potential damages amount to $5,000, but

1    may far exceed that amount if Plaintiff can establish actual damages incurred as a result of

2    applying to an allegedly non-compliant job posting.[2]

3            Amount In Controversy For Attorneys' Fees

4            Plaintiff also alleges an entitlement to attorneys' fees.  (Mantell Decl., ¶2, Exh. A, ¶16,

5    "Request for Relief").  Under Ninth Circuit precedent, a plaintiff's claim for attorneys' fees are

6    also included in the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156

7    (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees, either with

8    mandatory or discretionary language, such fees may be included in the amount in controversy.");

9    *see also Wise v. Long*, No. 3:23-CV-05111-RJB, 2023 WL 2787223, at *5 (W.D. Wash. Apr. 5,

10   2023) ("Although costs are excluded from § 1332(a)'s amount-in-controversy, attorneys fees are

11   included in the calculation."), reconsideration denied sub nom., No. 3:23-CV-05111-RJB, 2023

12   WL 3568510 (W.D. Wash. May 19, 2023).  In *Fritsch*, the Ninth Circuit held that future

13   attorneys' fees that are claimed, but not accrued at the time of removal, must also be considered in

14   the amount in controversy.  *Fritsch v. Swift Transp. Co. of Ariz., LLC,* 899 F.3d 785, 794 -796 (9th

15   Cir. 2018); *see also Roe v. Teletech Customer Care Mgmt. (CO), LLC*, No. C07-5149 RBL, 2007

16   WL 1655172, at *4 (W.D. Wash. June 6, 2007) ("[A] reasonable, informed estimation of fees,

17   based on the various tasks to be accomplished by both sides, and the hourly rates of the attorneys

18   who will conduct those tasks (including *future* attorneys' fees), properly comprise the evidence

19   that can and should be considered in evaluating the amount in controversy for jurisdictional

20   purposes.").

21           Including attorney's fees in calculating the amount in controversy in Washington Equal

22   Pay and Opportunities Act cases was recently affirmed by the district court in *Moliga v. Qdoba*

23   *Rest. Corp.*, No. 2:23-CV-01084-LK (W.D. Wash. Aug. 7, 2023), wherein the court found that

24   Qdoba Restaurant Corporation adequately showed cause to support diversity jurisdiction based, in

25

26   _____

27   [2] Plaintiff seeks, at a minimum, $5,000.00 for statutory damages, but he purports to bring this action on behalf of 40 other similarly situated individuals who also seek, at a minimum, $5,000.00 for statutory damages.  According to Plaintiff, the potential damages in this litigation if Defendant were found liable amount to $200,000 ($5,000.00 x 40)

28   or more depending on the proofs submitted on dispositive motions or at trial.

1 | part, on a reasonable estimation of attorneys' fees. (Castillo Decl., ¶5, <u>Exhs. 6-7</u>, Dkt. Nos. 1 and

2 | 13, Qdoba's Notice of Removal and Response to Order to Show Cause).

3 | The undersigned counsel has defended numerous employment-related actions against

4 | corporate employers.  The undersigned counsel has spent the last four years in private practice at

5 | Lane Powell PC in the State of Washington.  In that time, the undersigned counsel has defended

6 | five wage and hour class actions to resolution, and is currently litigating three others in state and

7 | federal court in Washington.  (Castillo Decl., ¶2).  The undersigned counsel is familiar with

8 | damages claims made by named plaintiffs and based on her experience, a typical plaintiff in a

9 | wage and hour action regularly seeks more than $75,000 in claimed damages particularly when

10 | attorneys' fees are allowed as they are under Washington's employment laws set forth in Wash.

11 | Rev. Code Title 49.  (*Id.* at ¶3).  Based on the undersigned counsel's experience, is not unusual for

12 | plaintiff's counsel to spend well over 100 hours of time just to investigate the case, prepare the

13 | complaint, engage in discovery, and litigate it through class certification or dispositive motions.

14 | (*Id.*).  These hours can become even more significant when multiple plaintiff's counsel are

15 | involved, as they are in this action. (*Id.*).

16 | Specifically, Defendant is informed and believes that the hourly rate for Attorney Emery is

17 | $725. (Castillo Decl., ¶4, <u>Exhs. 1-5</u>, Emery Reddy PLLC Fee Applications and Fee Awards).

18 | Assuming a rate of $725 per hour for Plaintiff's counsel (not including hours billed by other

19 | attorneys, paralegals, and support staff), Plaintiff's counsel need only spend approximately 103

20 | hours of time attributable to Plaintiff's claims, through trial, for the jurisdictional threshold to be

21 | met.[3]  For example, Plaintiff's counsel must investigate and prepare a complaint, file a motion for

22 | class certification (which Defendant will oppose), complete written discovery, conduct

23 |

24 | [3] Plaintiff's counsel recently filed a motion in support of an award of attorneys' fees, costs, and service awards in a wage and hour class action and represented to the court that he alone billed 113.4 hours and that his firm billed a total

25 | of 264.9 hours, for a total fee award of $125,852.50. (Castillo Decl., ¶4, <u>Exhs. 1-5</u>, Emery Reddy PLLC Fee Applications and Fee Awards).  Attorney Emery and his firm billed these hours even without filing motions for class

26 | certification or for summary judgment. (*Id.*).  Additionally, the law firm of Emery Reddy, PLLC has sought and been awarded similar fee awards in class action litigations in excess of $100,000, including a fee application of

27 | $204,848.83 in June 2021 and $270,000 in December 2020. (*Id.*).

28 |

1   depositions, and prepare or oppose dispositive motions.  Even if the motion for class certification

2   is granted, Defendants will likely appeal or will move for summary judgment after the close of

3   discovery.  Even if the motion for certification is denied, Plaintiff's counsel will undoubtedly

4   spend significantly more than 100 hours litigating Plaintiff's claims through summary judgment

5   and trial for the reasons set forth herein.  With attorneys' fees likely to be incurred by Plaintiff

6   through trial, the amount in controversy for Plaintiff's individual claims easily exceeds $75,000.

7          Service Award

8          In addition to the foregoing, as demonstrated by fee applications sought by Emery Reddy

9   PLLC in other class action litigations, Plaintiff will demand as much as $10,000 or $20,000 (in

10  addition to any statutory or other damages) related to his role as class representative. (Castillo

11  Decl., ¶4, Exhs. 1-5, Emery Reddy PLLC Fee Applications and Fee Awards).

12         Furthermore, if a named plaintiff in a diversity class action has a claim with an amount in

13  controversy in excess of $75,000, 28 U.S.C. § 1367 confers supplemental jurisdiction over claims

14  of unnamed class members irrespective of the amount in controversy in their claims. *Kanter v.*

15  *Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001).

16         Based on the foregoing, there is ample evidence that the amount in controversy, based on

17  the totality of Plaintiff's claims and request for relief, which includes his claims for actual and

18  statutory damages, injunctive relief, as well as attorneys' fees and costs, significantly exceeds the

19  jurisdictional minimum of $75,000 required by 28 U.S.C. § 1332, both at the time removal and at

20  the institution of this civil action.  The amount in controversy requirement for 28 U.S.C. § 1332 is

21  therefore satisfied.

22  **IV.    THIS REMOVAL NOTICE IS PROCEDURALLY PROPER**

23         **A.    The Removal Is Timely**

24         Plaintiff served the Complaint on Defendant on October 12, 2023.  Pursuant to 28 U.S.C. §

25  1446(b) and Federal Rules of Civil Procedure 6 and 81(c), Defendant has filed this Notice of

26

27

28

1    Removal within the time permitted for removal of complaints because this matter only became

2    removable on October 12, 2023 and this removal occurred within 30 days of that date.[4]

3    **B.    JOINDER**

4    Defendant is not aware of any other defendant that exists and who has been named in the

5    Complaint or who has been served with a summons and the Complaint.  The only defendants

6    named in the Complaint are Defendant and fictitiously named Doe Defendants, whose presence is

7    disregarded for purposes of removal.  *See Salveson v. Western States Bankcard Ass'n*, 731 F.2d

8    1423, 1429 (9th Cir. 1984), superseded by statute on other grounds as stated in *Ethridge v. Harbor*

9    *House Restaurant*, 861 F.2d 1389, 1392 (9th Cir. 1988).  Therefore, Defendant has sufficient

10   consent to remove the state court action.

11   **C.    VENUE IS PROPER**

12   This action originally was brought within a county encompassed by the Western District of

13   Washington—the Superior Court of the State of Washington, County of King.  Venue is proper in

14   this Court pursuant to 28 U.S.C. sections 128(b), and 1391.

15   **D.    NOTICE TO PLAINTIFF AND STATE COURT**

16   This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the

17   Superior Court of the State of Washington in and for the County of King.

18   In compliance with 28 U.S.C. section 1446(a), true and correct copies of all "process,

19   pleadings, and orders" from the state court action served on Defendant or filed by Defendant are

20   attached hereto as Exhibits A-I to the Mantell Decl.

21   WHEREFORE, having provided notice as is required by law, the above-entitled action is

22   removed from the Superior Court for the County of King to the United States District Court for the

23   District of Washington, Western Division.

24

25

26

27

28

---

[4] 30 days from October 12, 2023 is Saturday, November 11, 2023. As such, Defendant has timely filed this Notice of Removal by the next business day, Monday, November 13, 2023.

1  DATED: November 13, 2023

2                                    SHEPPARD, MULLIN, RICHTER &
                                     HAMPTON llp
3

4

5                                    By: /s/Ian Carleton Schaefer
                                         Ian Carleton Schaefer, *pro hac vice forthcoming*
6                                        Katerina Mantell, *pro hac vice forthcoming*
                                         30 Rockefeller Plaza
7                                        New York, New York 10112
                                         Telephone: 212-653-8700
8                                        Facsimile: 212-653-8701
                                         Email: ischaefer@sheppardmullin.com
9                                              kmantell@sheppardmullin.com

10                                       Attorneys for Defendant BURBERRY LIMITED
   DATED: November 13, 2023
11

12                                   LANE POWELL P.C.

13

14                                   By: /s/Callie A. Castillo
                                         Callie A. Castillo, WSBA No. 38214
15                                       Dailey Koga, WSBA No. 58683
                                         1420 Fifth Avenue, Suite 4200
16                                       Seattle, Washington 98101
                                         Telephone: 206-223-7000
17                                       Facsimile: 206-223-7107

18                                       Attorneys for Defendant BURBERRY LIMITED

19

20

21

22

23

24

25

26

27

28